# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRIAN LEWIS LAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-19-226-SPS |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of the Social ) | |
| Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Brian Lewis Lay requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-two years old at the time of the administrative hearing (Tr. 46, 177). He has a high school education and has worked as a machine tools spotter, drilling inspector, metal products fabricator, and rib bender (Tr. 66, 195). The claimant alleges that he has been unable to work since January 15, 2016, due to a back injury, right hand injury, neck impairment, and pain, numbness, and tingling on his right side (Tr. 194).

## Procedural History

On September 1, 2016, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 18, 177-78). His application was denied. ALJ Luke Liter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 22, 2018 (Tr. 18-38). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with frequent reaching, handling, and fingering with the bilateral upper extremities; occasional balancing, kneeling, stooping, crouching, crawling, and climbing ramps or stairs; and avoiding climbing ladders, ropes, or scaffolds (Tr. 23).

Additionally, the ALJ found the claimant could understand, remember, and carry out simple and some complex tasks, and could tolerate superficial contact with coworkers, supervisors, and members of the public (Tr. 23). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the national economy, *e. g.*, bottling line attendant, small product assembler, and inspector/packer (Tr. 35-38).

## Review

The claimant contends that the ALJ erred by failing to: (i) evaluate all of his impairments at step two, (ii) consider the combined effect of all his impairments when formulating the RFC, (iii) discuss evidence contrary to his findings, (iv) properly consider Dr. Ward's consultative opinion, and (v) include all of his limitations in the hypothetical question posed to the vocational expert ("VE"). The Court finds these contentions unpersuasive.

The ALJ found that the claimant had the severe impairments of degenerative disc disease of the lumbar spine, chronic pain syndrome, cervical spondylosis with radiculopathy, unspecified depressive disorder, and unspecified anxiety disorder (Tr. 20). The relevant medical records reveal that a September 2015 MRI of the claimant's lumbar spine identified an L5/S1 right paracentral disc extrusion with effacement of the right S1 nerve root as well as mild multilevel degenerative changes, most significant at the L5/S1 level (Tr. 274). The claimant presented to Dr. Michael Thambuswamy on October 8, 2015 and reported low back pain for two or three years that began radiating down his right leg three or four months earlier (Tr. 279-83). On physical exam, Dr. Thambuswamy found the

claimant could flex, extend, and rotate without any severe exacerbation of his pain; could squat and raise from squatting without any assistance; had full motor strength in his extremities; had normal sensation to light touch in his extremities except for his right foot; and there was no significant tenderness to palpation in his back (Tr. 280).  He observed that the claimant had a "significantly antalgic kind of limping gait." (Tr. 280).  Because the claimant was not showing signs of cauda equina syndrome, wanted to wait to undergo surgery, and did not want to undergo physical therapy, Dr. Thambuswamy referred the claimant for conservative treatment with epidural steroid injections and back strengthening exercises (Tr. 281).  Dr. Adam Wallace at Pain Management of Tulsa administered an epidural steroid injection on October 20, 2015 (Tr. 284-87).

   The claimant returned to Dr. Thambuswamy on September 21, 2016 and reported pain and numbness radiating down his legs bilaterally, as well as neck pain radiating down his right arm with numbness in the last two digits of his right hand (Tr. 303-05).  Dr. Thambuswamy noted the claimant could flex, extend, and rotate his neck with relatively normal range of motion, but had some reproducible posterior neck pain mainly with rotation toward the left (Tr. 304).  As to the claimant's back, Dr. Thambuswamy noted some tenderness to palpation in the lumbar and lumbosacral region midline (Tr. 304).  A lumbar spine MRI performed on October 3, 2016, revealed mild degenerative disc disease at L4-5 and L5-S1 causing mild to moderate neural foraminal stenosis bilaterally, type one modic changes along the anterior inferior endplate of L5, and type two modic changes along the anterior superior endplate of T12 (Tr. 299-300).  An MRI of the claimant's

cervical spine performed the same day revealed mild degenerative disc disease at C5-6 causing mild right neural foraminal stenosis (Tr. 301-02).

On November 11, 2016, Dr. Subramaniam Krishnamurthi performed a consultative physical examination of the claimant (Tr. 308-09). He observed that the claimant walked with a limp on his right leg due to back pain, had a stable but slow gait, and had difficulty sitting on the examination table due to back pain (Tr. 308). Dr. Krishnamurthi noted the claimant had normal range of motion in his cervical spine with slight associated pain, slightly reduced range of motion in his dorsolumbar region due to back pain, and normal range of motion and normal sensation to pain, temperature, and light touch in his extremities (Tr. 309). Dr. Krishnamurthi diagnosed the claimant with degenerative joint disease of the lumbosacral spine and neck pain (Tr. 309).

The claimant established care with Dr. Samuel Korbe at Tulsa Pain Consultants on November 18, 2016 (Tr. 316-18). On physical examination, Dr. Korbe found decreased range of motion in the claimant's cervical and lumbar spine with extension, full sensation in his extremities, full strength in his upper extremities, and reduced strength (4/5) in his right leg on knee extension (Tr. 317). He assessed the claimant with cervical and lumbar spondylosis and radiculopathy and prescribed narcotic pain medication (Tr. 317). Thereafter, nurse practitioners at Tulsa Pain Consultants managed the claimant's pain medication through May 2018 (Tr. 446-47, 450-51, 456-57, 463-65, 468-69). The claimant generally reported increasing effectiveness of his pain medication without side effects, and by May 2018, the medication reduced his pain by 50% (Tr. 446-47, 450-51, 456-57, 463-65, 468-69). The claimant's treating nurse practitioners regularly noted that the claimant's

pain medication helped him meet functional goals such as taking care of his farm, daily stretching, working on his seventy acres of land, and feeding animals on a daily basis (Tr. 450, 464, 469).

In addition to pain medication, the claimant was also treated with lumbar epidural steroid injections, cervical facet injections, and cervical radiofrequency ablations on an alternating basis between January 2017 and June 2018 (Tr. 374-76, 441-69). He reported widely varying levels of pain relief from both the lumbar and cervical injections, however, at a follow up appointment in July 2017, Dr. Korbe indicated the claimant had done well with lumbar injections and the claimant reported he could do everything "a little bit easier" following neck injections (Tr. 374-76, 441-69). The claimant also indicated in October 2017 and May 2018 that he had better mobility overall following lumbar injections (Tr. 443, 453). The claimant consistently reported a high level of enduring pain relief from the cervical radiofrequency ablations (Tr. 441, 448, 453). By April 2018, the claimant's treatment regimen allowed for him to maintain his daily activities with minimal breaks, he was physically active, and he had decreased pain with exercise (Tr. 446).

The claimant received inpatient care at Hillcrest Medical Center from February 28, 2017, until March 2, 2017, after presenting to the emergency department and reporting intermittent chest pain for three months along with headache, diaphoresis, flushing of the face, and jaw pain (Tr. 359-72). An EKG performed on arrival showed no significant ST- T wave changes and he had negative troponins (Tr. 361). An echocardiogram and heart catheterization performed March 1, 2017 were normal (Tr. 359, 364-66, 368-72). The claimant was diagnosed at discharge with: (i) chest pain on admission, noncardiac,

possible musculoskeletal versus anxiety; (ii) hypertension, stable; (iii) tobacco use, has been counseled on cessation and given starter pack for Chantix; and (iv) mixed dyslipidemia (Tr. 359).

On May 30, 2017, Kathleen Ward, Ph.D. performed a consultative mental status examination of the claimant (Tr. 425-29). Dr. Ward observed that the claimant gave good effort on the Montreal Cognitive Assessment ("MOCA") and chuckled as he completed it (Tr. 428). Dr. Ward indicated that the claimant's MOCA score of 22/30 was below average and that he had the most difficulty in language and delayed recall (Tr. 427). She stated that the claimant appeared to be a somewhat reliable historian and that he may benefit from a course of talk therapy in light of his report that his pain medication makes him feel irritable and depressed (Tr. 427). Dr. Ward also indicted that "pain medication can sometimes cause some mild neurocognitive symptoms," noting the claimant reported taking the highest dosage possible and had already taken two doses by the time of his appointment (Tr. 427). She diagnosed the claimant with unspecified major depressive disorder and unspecified anxiety disorder (Tr. 427).

State agency physician Dr. Nabeel Uwaydah completed a physical RFC assessment on November 28, 2016 and found the claimant could perform the full range of light work (Tr. 79-81). State agency physician Dr. Sarah Yoakam completed a physical RFC assessment on May 2, 2017 and found the claimant could perform the full range of medium work (Tr. 98-100).

State agency psychologist Claudia Kampschaefer, Psy.D. reviewed the record in November 2016 and concluded that the claimant had no medically determinable mental

impairments (Tr. 78-79). State agency psychologist Laura Eckert, Ph.D. completed a mental RFC assessment on June 12, 2017, wherein she concluded that the claimant could perform simple and some complex tasks, relate to others on a superficial work basis, and adapt to a work situation (Tr. 100-02).

In his written opinion, the ALJ thoroughly summarized the claimant's testimony and the medical and opinion evidence (Tr. 22-35). In discussing the requisite listing analysis at step three, the ALJ summarized the evidence related to the claimant's mental impairments, including Dr. Ward's consultative mental status examination (Tr. 21-22). The ALJ noted that the claimant primarily reported physical limitations affecting his daily activities, did not include any psychotropic medications on his September 2017 medication list, and denied taking antidepressants at a December 2017 pain management appointment (Tr. 22-23). At step four, the ALJ thoroughly discussed the medical evidence, including the claimant's treatment for back and neck pain, the lumbar and cervical imaging, his chest pain, and his mental health treatment (Tr. 23-35). The ALJ concluded that the record did not support the claimant's alleged loss of functioning and only partially supported his allegations related to pain, noting a number of inconsistencies between the claimant's testimony and the evidence of record, particularly as to the activities reported to providers at Tulsa Pain Consultants and the effectiveness of his treatment there (Tr. 25-35). In discussing the opinion evidence at step four, the ALJ summarized the consultative findings of Dr. Krishnamurthi and Dr. Ward but did not assign their opinions any specific weight (Tr. 28-29, 32-34). The ALJ gave great weight to Dr. Eckert's opinion regarding the claimant's mental limitations and adopted her findings in the RFC (Tr. 35). The ALJ then

gave moderate weight to Dr. Uwaydah's opinion that the claimant could perform the full range of light work and little to no weight to Dr. Yoakam's opinion that the claimant could perform the full range of medium work, finding the evidence supported postural and upper extremity limitations (Tr. 35).

The claimant first contends that the ALJ erred at step two by failing to discuss the severity of his lumbar radiculopathy, low back pain, right sciatic nerve pain, lumbosacral spondylosis, neck pain, lumbago with sciatica, tibial nerve palsy, chest pain, healed previous myocardial infarction, hypertension, palpations, mixed dyslipidemia, and hyper lipidemia.  This Court and the Tenth Circuit have repeatedly held, "[o]nce the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two.  His failure to find that additional alleged impairments are also severe is not in itself cause for reversal."  *Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008).  Thus, even assuming *arguendo* that the ALJ erred by not finding these impairments severe, such error was harmless because he found the claimant had other severe impairments at step two.

The claimant next contends that the ALJ erred in his RFC assessment because he failed to consider the combined effect of all his impairments and ignored the temporary nature of his pain relief.  The Court finds that the ALJ did not, however, commit any error in his analysis.  Although the ALJ did not recite every diagnosis found in the record, he thoroughly discussed the findings of the claimant's various treating, consultative, and reviewing physicians as to his back, neck, extremities, and heart, as well as the pain associated with each, and his opinion clearly indicates that he adequately considered the

evidence in reaching his conclusions regarding the claimant's RFC. *See Hill,* 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of h[er] RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [s]he can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). Furthermore, the claimant does not point to any evidence in the record showing that his chest pain, healed previous myocardial infarction, hypertension, palpations, mixed dyslipidemia, and hyperlipidemia, either individually or in combination with his other impairments, resulted in any functional limitations. *See Welch v. Colvin*, 566 Fed. Appx. 691, 695 (10th Cir. 2014) (finding harmless any error the ALJ made by not considering the combined effects of all of the claimant's impairments since there was no evidence that such impairments restricted the claimant's ability to work).

The claimant next contends that the ALJ failed to properly consider Dr. Ward's consultative opinion. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided

and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

The claimant specifically asserts that the ALJ failed to account for Dr. Ward's notation that "pain medication can sometimes cause some mild neurocognitive symptoms" and his below average MOCA score (Tr. 426-27). The claimant correctly points out that the ALJ did not specifically mention Dr. Ward's statement regarding the claimant's mild neurocognitive side effects from medication, but the Court finds he was not required to. Such statement is a subjective symptom, rather than a medical opinion, and the ALJ properly concluded that the claimant's subjective symptoms were not fully supported by the evidence (Tr. 25-35). Likewise, the claimant's MOCA score is also not a medical opinion, and because Dr. Ward did not indicate what, if any, functional limitations resulted from the claimant's below average score, the ALJ was not required to specifically discuss it. *See, e. g., Moua v. Colvin*, 541 Fed. Appx. 794, 797-98 (10th Cir. 2013) ("Dr. Bhakta's treatment notes do not offer any medical opinions concerning [the claimant's] abilities or limitations. . . Thus, there was no pertinent medical opinion for the ALJ to weigh."); 20 C.F.R. § 404.1527(a)(1) (defining medical opinions as "judgments about the nature and severity of [a claimant's] impairment(s), including his symptoms, diagnosis and prognosis, what he can still do despite impairment(s), and his physical or mental restrictions"). In any

event, the ALJ summarized Dr. Ward's consultative examination findings, *including* the claimant's MOCA score, adopted her diagnoses of unspecified major depressive and anxiety disorders, found they were severe impairments, and included psychologically based limitations in the RFC. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton*, 79 F.3d at 1009-10. Here, the ALJ did not recite every one of Dr. Ward's examination findings, but he clearly considered her examination (Tr. 22, 32-33).

Finally, the claimant contends that the ALJ failed to include all his limitations in the hypothetical question posed to the VE, and thus his step five findings are erroneous as well. Specifically, he asserts that the hypothetical question should have included limitations for his heart, hypertension, and upper extremity impairments. However, as set forth above, the ALJ *did* include reaching and manipulative limitations in the RFC and he discussed the evidence related to the claimant's heart, correctly noting there were no abnormal cardiac findings. Furthermore, the claimant does not point to any evidence other than his own assertions to support the limitations he claims. Accordingly, the ALJ was not required to include additional limitations in his RFC assessment, or in his hypothetical question posed to the VE. *See Qualls v. Apfel,* 206 F.3d 1368, 1373 (10th Cir. 2000) ("We have already rejected [the claimant's] challenges to the ALJ's RFC assessment. The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in h RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision."). *See also Adams v. Colvin,* 553 Fed. Appx. 811, 815

(10th Cir. 2014) ("An ALJ does not need to account for a limitation belied by the record when setting a claimant's RFC."), *citing Qualls,* 206 F.3d at 1372.

The ALJ specifically noted every medical record available in this case, gave reasons for his RFC determination, and ultimately found that the claimant was not disabled. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before he can determine RFC within that category.' "), *quoting Howard*, 379 F.3d at 949. This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

## Conclusion

In summary, the Court finds that correct legal standards were applied, and that the decision of the Commissioner is supported by substantial evidence. The Commissioner's decision is therefore hereby AFFIRMED.

**DATED** this 24th day of September, 2020.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**